**Augustin VILLEGAS, et al., Plaintiffs,**

v.

**Kevin CONCANNON, et al., Defendants.**

**CV No. 89–770–PA.**

United States District Court,
D. Oregon.

July 18, 1990.

Lisa A. Linhart, Mark J. Wilk, Oregon Legal Services, Corp., Hillsboro, Or., Kent B. Thurber, Portland, Or., for plaintiffs.

Dave Frohnmayer, Atty. Gen., Jack L. Landau, Stephanie L. Striffler, Asst. Attys. Gen., Dept. of Justice, Salem, Or., for defendants.

## OPINION

PANNER, Chief Judge.

Plaintiffs are migrant farm workers who applied for and were denied expedited food stamps by the Oregon Department of Human Resources ("Department"). They bring this action against officials of the Department, alleging that defendants unlawfully denied expedited food stamps and expedited hearings reviewing the denials. Plaintiffs claim that the Department's denials of expedited food stamps violated the Food Stamp Act, and that the failure to provide expedited hearings to review those denials denied due process of law. Plaintiffs seek declaratory and injunctive relief that defendants cease and desist these allegedly unlawful practices and policies.

The parties agreed to a paper trial on stipulated facts, and final arguments were heard on May 7, 1990. I now grant plaintiffs the relief they seek.

## FACTS

Plaintiffs are migrant workers who applied for expedited food stamps in Oregon, and were denied those stamps by the Department because they had been sent

stamps or a card for stamps in another state during the same month. None of the plaintiffs actually received the other stamps, and eventually were able to prove that fact to the Department. They received the Oregon stamps much later.

In each case, during its expedited eligibility determination, the Department discovered that the plaintiff had been issued stamps in another state, which had been mailed to plaintiff, and not returned. On the basis of this information the Department denied plaintiffs' applications for expedited Oregon stamps because plaintiffs were deemed to be "participating" in the Food Stamp Program in another state.

In each case, plaintiff stated that those stamps were not received by plaintiff, but the Department deemed the statement insufficient to establish eligibility given the information from the other state, and plaintiff ended up with no stamps until the following month. Stamps for the initial month were not issued until the Department verified that the stamps issued in the other state had been returned.

Defendants did not provide plaintiffs with expedited administrative hearings to review the denial of expedited stamps. Each plaintiff had to wait more than a month for a hearing.

## VIOLATION OF THE FOOD STAMP ACT

■ The Food Stamp Act, 7 U.S.C. §§ 2011–2030 ("Act"), establishes a program administered by both the U.S. Department of Agriculture ("U.S.D.A.") and the states. This joint federal-state effort provides qualified low income households with financial assistance in the form of food stamps. The stamps are used to purchase food from certain approved stores. Section 2011 of the Act, the "Congressional declaration of policy," declares that the Food Stamp Program is designed to raise levels of nutrition among low-income households, where limited food purchasing power contributes to hunger and malnutrition. The program permits "low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011.

The U.S.D.A. promulgates regulations, which state agencies such as the Department are subject to, for determining and verifying eligibility of an applicant household for food stamps. States are prohibited from imposing any additional eligibility standards. 7 U.S.C. § 2014(b). Eligibility is based on several factors, including residency. No individual may participate in more than one area in any month. 7 C.F.R. § 273.3.

Destitute migrant farmworkers are entitled to receive food stamps in an expedited time frame. 7 U.S.C. § 2020(e)(9)(A)(i)(I); 7 C.F.R. § 273.2(i)(1)(i). An eligible farmworker is entitled to receive food stamps within five days of application. 7 U.S.C. § 2020(e)(9); 7 C.F.R. § 273.2(i). The expedited issuance of stamps must not be delayed pending verification of any eligibility standard other than the household's identity. 7 C.F.R. § 273.2(i)(4)(i).

The Department contends that it did not improperly delay eligibility pending verification, but denied eligibility based upon timely verification that plaintiff was participating in the program in the other state. The Department defines "participating" as being sent stamps in another state that have not been returned. The only way the Department will reverse its determination of ineligibility is by a showing that the issued stamps have been returned. The Department will not accept a statement by the individual that the stamps were never received.

The Department's policy of defining participation by the issuance of stamps, and requiring verification of their return before finding eligibility is referred to as its residency eligibility requirement. The legality of that requirement is at issue in this case.

Defendants present two basic arguments to support the residency eligibility requirement. First, they believe that their definition of "participation" is correct within the meaning of the statute. Defendants rely on the legal presumption that items put in

the mail are received to explain why mailed stamps or coupons are treated as received unless proved otherwise. Second, they assert important policy considerations behind their actions, specifically that the substantial federal sanctions against states for over-issuance of stamps require the Department to consider prevention of multiple participation a fundamental duty.[1]

The facts demonstrate how the defendants' residency eligibility requirement conflicts with the expedited service provisions of the Act and the regulations. By definition, a destitute migrant farmworker household is likely to move from area to area, and to need food stamps in the new area immediately upon arrival. The Department's residency eligibility requirement prevents a household from receiving expedited service if the timing of the move is such that stamps have already been issued in the prior area. The applicant is forced to prove a negative—the non-receipt of stamps—by a showing of the mail being returned, which cannot be made to defendants' satisfaction in an expedited time frame.[2] These households are effectively denied expedited service by the requirement. I conclude that the requirement contravenes the expedited service provisions of the Act and the regulations.

Defendants' stated reasons for the requirement do not withstand scrutiny. The legal presumption that mail sent and not returned is received is irrelevant to this situation. The presumption itself is not conclusive, only assisting in establishing a fact. The Department chooses to conclude that a declaration by the applicant that the stamps were not received is insufficient to counter the presumption.[3] I do not reach the same conclusion. In this dispute the stipulated facts demonstrate that the conclusion was incorrect, for in fact, each plaintiff had not received the stamps.

Defendants also argue that they risk substantial sanctions if they overissue stamps. But if they required applicants to sign a statement attesting to not receiving stamps in the prior area in that month, the onus for any duplicate participation would rest with the applicants, not the Department.[4] A requirement that allowed applicants to receive expedited service, at their own peril if duplicative, would not contravene the expedited service provisions of the Act and the regulations.

By letter dated April 10, 1990, Janet Allen, Chief of Program Operations, Section I of the Food Stamp Program, Western Region, of the Food & Nutrition Service of the U.S.D.A., responded to a letter from Michael Buckley of the Department seeking written clarification of policy concerns relating to this litigation. Ms. Allen suggested that by adopting a requirement of the type I have just described, Oregon would not violate Food Stamp Program regulations "provided that the household is otherwise eligible and signs a statement attesting to the fact that it did not participate in the State of prior residence." That language doubly supports plaintiffs' position. It discredits defendants' reliance on the threat of sanctions, but more importantly, the word "participate" is used inconsistently with defendants' definition. It would be impossible for an applicant to attest to not participating in the prior area if participation meant being sent stamps that had not been returned. I conclude that "participation" is defined as actually

---

**1.** 7 U.S.C. § 2025(c) authorizes adjustments in the State agency's federally funded share of administrative costs based on a "payment error rate," as incentive to reduce error.

**2.** Given the time that the post office holds the mail before returning, and the time the State agency takes to record the return of stamps, it is virtually impossible for an applicant to demonstrate that the stamps have been returned within five days.

**3.** The presumption may not be applicable at all in this situation, where the stamps were sent by registered mail, and defendants offer no evidence of plaintiffs signing for the mail. Since I find the presumption irrelevant, I need not address this question.

**4.** Intentional program violations subject individuals to progressive disqualification from the Food Stamp Program—six months for the first violation, one year for the second, and permanently for a third violation. 7 U.S.C. § 2015(b)(1); 7 C.F.R. § 273.16.

receiving food stamps or coupons, within the meaning of the Act.[5]

I conclude that the defendants' residency eligibility requirement violates the Food Stamp Act. The existing requirement is unlawful, and defendants must cease and desist this unlawful practice and policy. If an applicant household otherwise eligible for expedited service will sign a statement attesting to non-participation[6] in the prior area that month, the Department cannot deny expedited service because stamps or coupons were sent to the applicants in the prior area.

## DUE PROCESS

Food stamp applicants have a right to a hearing if "aggrieved by any action of the State agency which affects the participation of the household in the Program." 7 C.F.R. § 273.15(a). The regulations, however, do not specify a right to an expedited hearing if aggrieved by action relating to the expedited service provisions.

The fifth and fourteenth amendments to the Constitution protect against deprivation of liberty or property without due process of law. Plaintiffs argue that due process requires defendants to provide such a hearing. To establish a denial of due process, plaintiffs must prove governmental action and a deprivation of a constitutionally cognizable liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The requisite governmental action is not disputed.

■ Food stamps are a legal right and a statutory entitlement. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1974). Generally, entitlement to food stamps constitutes a property interest. *Atkins v. Parker*, 472 U.S. 115, 128, 105 S.Ct. 2520, 2528, 86 L.Ed.2d 81 (1985). But two courts have held that no property interest was implicated by a failure of the state agency to provide a pre-deprivation hearing

at the end of a period of certification. *Holman v. Block*, 823 F.2d 56 (4th Cir.1987); *Banks v. Block*, 700 F.2d 292 (6th Cir. 1983). Those cases can be distinguished from this case by the fact that plaintiffs sought to protect a property interest in continued food stamp benefits after the close of a certification period. In this case plaintiffs seek an expedited hearing so that they may receive expedited benefits if they prevail. No benefits are sought until a determination of eligibility is made.

■ The Ninth Circuit has not addressed this question. The expedited service provisions of the regulations specifically require expedited issuance of stamps without delay for verification of any eligibility standard other than the household's identity. 7 C.F.R. § 273.2(i)(4)(i). The regulations do not contemplate any other barriers to expedited service. I conclude that when a destitute migrant worker household has applied for stamps in a new area, and established the identity of the household, a constitutionally cognizable property interest is implicated.

■ Having found a property interest that triggers due process analysis, I must evaluate how much process is due, through consideration of four factors: the private interest involved; the risk of erroneous deprivation; the value of additional safeguards; and the governmental interest. *Mathews v. Eldridge*, 424 U.S. at 332, 96 S.Ct. at 901.

The private interest involved is the hunger and malnutrition of destitute migrant farmworker households. The risk of erroneous deprivation is great because a non-expedited hearing completely prevents expedited service for households whose applications for expedited service are denied. The additional safeguard sought by plaintiffs would reduce the risk of destitute migrant farmworker households going hungry. Finally, the government interest in

---

**5.** 7 U.S.C. § 2012, the definitional section of the Act, does not define any form of the word "participate."

**6.** The household members signing the statement need to be informed of the potential for disqual-

ification for intentional Program violations, and that signing this statement if stamps for this month have been received in the prior area is an intentional Program violation.

raising levels of nutrition among low-income households outweighs the government interest in avoiding duplicative participation, when an expedited hearing will not promote duplicate participation, but will only speed the participation of eligible households.

All four factors weigh towards requiring an expedited hearing as process that is due. I conclude that applicants for expedited food stamp service are entitled to expedited hearings if aggrieved by any action of the Department which affects the expedited participation of the household in the Program.

Requiring an expedited hearing will not change any of the requirements of the hearing itself, only the timing. The specifics are left to the Department, as long as the hearing is held, and a decision issued, within nine working days of an applicant's request.

## CONCLUSION

I declare defendants' residency eligibility requirement unlawful. I enjoin defendants from denying expedited service to destitute migrant farmworker households that have established the identity of the household, on the basis of stamps or coupons having been mailed to applicants in a prior area, if the applicant household signs a statement attesting to non-participation in the prior area that month. Furthermore, due process of law entitles applicants for expedited food stamp service to expedited hearings if they are aggrieved by any action of the Department which affects the expedited participation of the applicant household.

This opinion constitutes my findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).